UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARIANNE BARKER,

      Plaintiff,                           Case No. 13-CV-11828
                                             Hon. Matthew F. Leitman

v.

GENESYS PHO, LLC

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT GENESYS PHO, LLC'S
MOTION FOR SUMMARY JUDGMENT (ECF #14)**

**INTRODUCTION**

In July of 2011, Plaintiff Marianne Barker ("Ms. Barker"), an employee of Defendant Genesys PHO, LLC ("Genesys"), experienced very serious medical complications after her dog bit her hand.  Ms. Barker told Genesys that her health problems were so serious that they prevented her from coming to work, and she did not report to work for her scheduled shifts between July 6 and July 21.  Genesys concluded that Ms. Barker's absences were not protected by the Family Medical Leave Act, 29 USC § 2601 *et seq.* (the "FMLA") – or excused for any other reason – and it terminated her employment.   In this action, Ms. Barker alleges that Genesys interfered with her rights under the FMLA.

Genesys says that when Ms. Barker announced her need for time off, it exercised its right under the FMLA to require her to submit – within fifteen days – a physician's certification that her condition prevented her from working. Genesys insists that Ms. Barker failed to provide this certification within the fifteen-day period, that her leave was thus not protected under the FMLA, and that it could (and did) lawfully terminate her employment for missing work. Genesys seeks summary judgment on this defense. (*See* Genesys Mot. and Br., ECF #14.)

However, there are material factual disputes as to whether the fifteen-day period for Ms. Barker to submit the certification began to run on the date that Genesys started counting (and, indeed, as to whether it began to run at all) and whether it was practicable for Ms. Barker to provide a certification within fifteen days. These fact questions preclude entry of summary judgment in Genesys' favor. Accordingly, the Court **DENIES** Genesys' motion.

## FACTUAL BACKGROUND

### A.    Genesys Hires Ms. Barker

In 2009, Genesys hired Ms. Barker as a "Health Navigator/Quality Management Coordinator." (*See* Ms. Barker's Deposition, ECF #17-18 at 150, Pg. ID 378.) Ms. Barker's responsibilities included working with primary care physicians to develop health care plans and making recommendations for the

2

improved delivery of health care services.  (*See* Genesys Job Description, ECF #14-4; Ms. Barker Dep. at 31, Pg. ID 259.)

**B.     Genesys' Attendance and Medical Leave Policies**

When Genesys hired Ms. Barker, it gave her a copy of its Human Resource Manual.  (*See* Ms. Barker's Dep. at 30, Pg. ID 258; *see also* Verification Form, ECF #14-5.)  Ms. Barker agreed to "abide by" the "rules and regulations" included in the manual.  (ECF #14-5.)

Two policies included in the manual are relevant to this action: Genesys' "Attendance and Punctuality" policy (*see* the "Attendance Policy," ECF #14-6) and its "Family and Medical Leave" policy (*see* the "FML Policy," ECF #14-7). In relevant part, the Attendance Policy states that "[e]mployees whose unscheduled absences … exceed acceptable levels are subject to corrective action up to and including termination."  (Attendance Policy at 1, Pg. ID 90.)  The policy further provides:

> 1.     If an employee will be absent from work, he/she must notify his/her supervisor … at least one hour before scheduled work time … If an employee's unplanned absence continues for more than a day, the employee must call in daily to update his/her supervisor …
>
> [….]
>
> 3.     An occurrence of an unreported absence is defined as part or all of a single working day or series of consecutive working days.  Unreported absences which exceed two (2) per year are considered excessive and

3

> subject to corrective action up to and including termination. …

(*Id.*)

Genesys' FML Policy "grant[s] up to 12 weeks of family and medical leave during any 12 month period, in accordance with the [FMLA]." (FML Policy at 1, Pg. ID 93.) The FML Policy allows an "employee [to] take a leave because of a serious health condition that makes the employee unable to perform the functions of the employee's position." (*Id.* at 2, Pg. ID 94.) The FML Policy states that Genesys "will require an employee to provide a doctor's certification of the serious health condition." (*Id.*) The required certification must, among other things, "[d]escribe the [relevant] medical facts …. [s]tate the approximate date the conditions commenced, and the probable duration of the condition." (ECF #14-11.)

The FML Policy instructs employees that they "should respond to the request for [a] certification within 15 days of the request or provide a reason for the delay." (FML Policy at 1, Pg. ID 93.) The FML Policy does not specifically inform employees that failure to provide a certification could result in the termination of their employment. (*See id.* at 3, Pg. ID 95.) But the FML Policy does state that "[f]ailure to provide [a] certification may result in denial of the leave." (*Id.*)

**C.    Ms. Barker is Bitten by Her Dog, and She Informs Genesys of Her Need for Leave**

On July 4, 2011, Ms. Barker's dog bit her hand.  (*See* Ms. Barker Dep. at 91-92, Pg. ID 319-320.)   The bite required stiches and immediate antibiotic treatment from a local emergency room.   (*See id*. at 151, Pg. ID 379.)  The next night (the evening of July 5), Ms. Barker's "hand started to swell and ooze."  (*Id.*) Ms. Barker planned to see her doctor the following morning, July 6, which was her first scheduled day of work after the bite.  (*See id.* at 99-100, Pg. ID 327-328.)

In compliance with the Attendance Policy, Ms. Barker called her supervisor on the morning of July 6.  Ms. Barker reported that she had been bitten by her dog, believed that her hand was infected, was going to see her doctor that morning, and would be absent from work.  (*See id.*; *see also id.* at 151-152, Pg. ID 379-380.)

At the time Ms. Barker spoke to her supervisor on July 6, she had used up all of her available time off.  She understood that "unless [she] had a justifiable excuse to be away from work[,] there was nothing that covered [her] absences at that [time]."  (*Id.* at 127, Pg ID. 355; *see also id.* at 95, Pg. ID 323.)  Ms. Barker therefore intended to seek leave under the FMLA and pursuant to Genesys' FML Policy.

Ms. Barker was aware of the statement in Genesys' FML Policy that Genesys will require an employee seeking FMLA leave to submit a physician certification within 15 days of a request.  (*See id.* at 166, Pg. ID 394.)  She also

5

acknowledges that when she spoke to her supervisor on July 6, she "would have been thinking [about] or been advised to fill out" a certification. (*Id*. at 95, Pg. ID 323.)   Moreover, on July 6, Ms. Barker had a blank certification form in her possession. (*See id.* at 110-111, Pg. ID 338-339.)   She had obtained that form in April of that year when she was dealing with a different medical condition.   (*See id.*)

There is no evidence that Genesys made a written request for a certification on July 6. Nor does the record contain evidence that on July 6 Genesys advised Ms. Barker in writing of the consequences for failing to submit a certification within fifteen days.

**D.    Ms. Barker is Hospitalized and Informs Genesys That She Will Miss Additional Work**

After Ms. Barker's doctor examined her hand on July 6, the physician "sent [Ms. Barker] directly to the hospital" for inpatient treatment. (*Id.* at 96, Pg. ID 324.)   After arriving at the hospital, Ms. Barker called her office (for the second time that day) to say that she was "going to [be] directly admit[ted] []into the hospital" and would be absent from work.   (*Id.* at 99, Pg. ID 327.)

Ms. Barker remained hospitalized for several days.   (*See id.* at 96, Pg. ID 324.)   Ms. Barker was diagnosed with cellulitis – an infection – that required aggressive therapy. (*See id.* at 152-153, Pg. ID 380-381.)   The hospital treated Ms.

6

Barker with "IV antibiotics" and "pain control" medications.  (*Id.* at 96-97, Pg. ID 324-325.)

**E.     Ms. Barker Suffers Additional Severe Complications and She Communicates With Genesys Regarding the Certification**

The hospital discharged Ms. Barker on July 9.  (*See id.* at 153, Pg. ID 381.) At that time, Ms. Barker's doctors believed her condition had improved, and they even allowed her to make a very brief appearance at a wedding that afternoon. (*See id*.)  Ms. Barker, however, remained on prescribed narcotics, and her doctors recommended that she not return to work until after a post-hospital checkup on July 13.  (*See id.* at 100, Pg. ID 327.)

On July 12, Ms. Barker "started not to feel well."  (*Id.* at 153, Pg. ID 381.) Ms. Barker says that on that day she began suffering "uncontrollable diarrhea" and other complications she believed to be the result of an infection.  (*Id.* at 153-154.)

The next day (July 13), Ms. Barker saw her doctor for her post-hospital checkup.  During this appointment, Ms. Barker's physician "removed [Ms. Barker's] stitches" and diagnosed Ms. Barker with a "systemic infection" in her "bloodstream."  (*Id.* at 101-103; Pg. ID 329-331.)  The doctor told Ms. Barker that she should continue to stay home from work.  (*See id.* at 102-103, Pg. ID 330-331.)

It appears that during this appointment, Ms. Barker gave her doctor a certification form – the one she had left over from her April health issue – and

asked her doctor to complete it.[1]   (*See id.* at 111-113, Pg. ID 339-341.)   Ms. Barker's doctor did not complete the form at that time, and Ms. Barker left her doctor's office without it.   (*See id.* at 121, Pg. ID 349.)   That same day, July 13, Genesys mailed Ms. Barker a new set of unidentified "FMLA forms…" (*Id.* at 109, Pg. ID 337.)[2]

Following her doctor's appointment on July 13, Ms. Barker told her supervisor that her doctor was running tests "trying to figure out what the systemic [infection] was being caused from."   (*Id.*)   During this conversation (and others), Ms. Barker's supervisor "impress[ed] upon [Ms. Barker] the importance of doing something to provide medical substantiation other than [her] description of [her] symptoms."   (*Id.* at 154, Pg. ID 382.)   Ms. Barker says that she explained to her supervisor that her return date "kept being pushed back because of [her] complications," and she asked the supervisor for guidance as to how her physician should complete the certification form given that both the precise cause of her ailments and her return date were unknown. (*Id.* at 113, Pg. ID 341; 116, Pg. ID

---

[1] Ms. Barker testified that she "probably took [the certification form to her doctor] on the 13th" but she could not specifically remember when she gave the form to her physician.  (*Id.* at 121-122, Pg. ID. 349-350.)

[2] The record does not contain a copy of the exact "forms" Genesys sent to Ms. Barker.   Therefore, it is unknown whether Genesys simply sent Ms. Barker a certification form, or if the documents it sent Ms. Barker included a request to complete a certification and explained the consequences for Ms. Barker's failure to do so within fifteen days.

344.)  According to Ms. Barker, neither her supervisor nor anyone else at Genesys provided any advice or answers to resolve her confusion.  (*See id.* at 113, Pg. ID 341.)  Ms. Barker also says her supervisor never directed her (Ms. Barker) to submit a certification by any particular date.  (*See id.* at 155.)

**F.     Ms. Barker's Physician Fills Out a Certification Form, But Ms. Barker Says She Was Too Ill to Retrieve the Form and Submit it to Genesys**

After Ms. Barker left her doctor's appointment on July 13, her doctor filled out the certification form Ms. Barker had given her.  (*See* the "Completed Certification," ECF #14-11.)  Although the Completed Certification is undated, Ms. Barker believes that her physician filled out the Completed Certification "around the 13th or 14th" of July.  (Ms. Barker Dep. at 120, Pg. ID 348.)  On the Completed Certification, Ms. Barker's physician wrote that Ms. Barker had been "admitted to McLaren Regional Medical Center" for several days following a dog bite. (The Completed Certification at 1, Pg. ID 108.)  The form twice asked the physician to address the "probable duration" of Ms. Barker's condition.  (*Id.*)  The physician responded: "7/4/11 to approx. 7/18/11" and "no work until 7/18/2011." (*Id.*)  The Completed Certification did not specifically address any of Ms. Barker's post-hospitalization complications or infections.  (*See id.*)

Ms. Barker says that she could not retrieve the Completed Certification because her complications had worsened and she "couldn't get out of her house." (Ms. Barker Dep. at 120, Pg. ID 348.)  For example, Ms. Barker says that on July

15 she was suffering from "severe diarrhea, abdominal pain, [and a] fever." (*Id.* at 104, Pg. ID 332.)  And Ms. Barker says that she was so ill on July 18 that she "couldn't even get into the doctor's office" because she "[couldn't] get out of the bathroom." (*Id.*)

Ms. Barker claims that her family members were likewise unable to pick up the Completed Certification and deliver it to Genesys.  According to Ms. Barker, her husband had just started a new job and could not leave work to pick up the Completed Certification, and her daughter was occupied caring for a newborn. (*See id.* at 134, Pg. ID 362.)  Ms. Barker also explained that her doctor would not fax the Completed Certification directly to Genesys because the doctor did not want to assume responsibility for successful delivery of the form. (*See id.*)

## G.    Ms. Barker Informs Genesys She Does Not Know When She Will Be Healthy Enough to Return to Work

Ms. Barker was scheduled to work on July 19.  That morning, she called Genesys to say that she was still suffering from complications due to her medications and that she did not know when she would be healthy enough to return to work.  (*See id.* at 114-116, Pg. ID 342-344.)  Ms. Barker made this call at approximately 10:07 a.m., a little more than an hour after her shift started. (*See id.* at 126-127, Pg. ID 354-355.)  Pursuant to Genesys' Attendance Policy, Ms. Barker should have made this call prior to the start of her shift.  (*See id.*)  Ms. Barker explained that she called after the deadline because she "had been up all night in

10

the bathroom," fell asleep just before morning, and inadvertently slept later than she intended.  (*Id.*)[3]

## H.     Genesys Terminates Ms. Barker's Employment on July 21

On July 21, Genesys terminated Ms. Barker's employment. (*See* the "Termination Letter," ECF #14-10.)  In the Termination Letter, Genesys Chief Operating Officer Paul Garson ("Mr. Garson") wrote that Ms. Barker's "continued absence from July 6, 2011 through the present date ha[d] been categorized as repeated unreported absences."  (*Id.*)  Mr. Garson specifically cited Ms. Barker's failure to submit a certification as grounds for her termination: "As you should be aware, the purpose of providing the FMLA documentation from your physician is to ensure you qualify for FMLA Leave … The 15-day period for supplying the requisite physician certification has expired as of today." (*Id.*)  As Mr. Garson's letter makes clear, the "15-day period," as calculated by Genesys, began to run on July 6, 2011.

---

[3] Ms. Barker continued to have complications for the next several weeks.  On July 25, and again on August 3, emergency room doctors treated Ms. Barker for a "severe allergic reaction" to her prescribed medications.  (*Id.* at 105, Pg. ID 333.) And as late as August 25, the date Ms. Barker's doctors cleared her to return to work, Ms. Barker still continued to suffer from "diarrhea three to four times a day…."  (*Id.* at 105-106, Pg. ID 333-334.)

**I.**     **After Her Termination, Ms. Barker Submits the Completed Certification**

After Ms. Barker received the Termination Letter, she obtained the Completed Certification that her physician had prepared roughly ten days earlier. On July 25, Ms. Barker submitted the Completed Certification to Genesys, and she asked Genesys to reinstate her.  (*See* Ms. Barker's Dep. at 118-119, Pg. ID 346-347.)  As noted above, the Completed Certification accounted for Ms. Barker's absences through at least July 18, but it did not unambiguously excuse her from work after that date and did not address any of her post-hospitalization complications.  (*See* the Completed Certification at 1, Pg. ID 108.)

Ms. Barker recognized that the Completed Certification did not cover the full time that she had been absent, and she indicated to Genesys that she intended to have her physician update the form.  Specifically, when Ms. Barker delivered the Completed Certification, she hand-wrote on the top of it: "Note: My physician will update to reflect additional time off due to complications."  (*Id*.)  Ms. Barker explains that the Completed Certification, as filled out by her physician, did not cover the entire period of her absence because the physician finished it "before" she had many "of the complications" that caused her to miss so much work.  (Ms. Barker Dep. at 120, Pg. ID 348.)

12

**J.      Genesys Refuses to Reverse the Termination**

After receiving the Completed Certification, Genesys refused to reconsider its termination of Ms. Barker's employment, and it rebuffed her requests for a meeting.  In a letter to Ms. Barker dated July 28, 2011, Mr. Garson said that the Completed Certification "clearly indicates [she was] authorized by [her] physician to return to work after July 18, 2011" and thus "even if the documents had been supplied" earlier "the outcome would be the same" because Ms. Barker was absent beyond July 18. (Mr. Garson July 28 Correspondence, ECF #14-12.)  Mr. Garson told Ms. Barker that "[h]aving further discussions regarding the termination will not result in a change in the decision."  (*Id.*)

There is no evidence in the record that Ms. Barker continued to seek – nor that she obtained – an updated certification from her physician after Mr. Garson told her that Genesys' decision to fire her was final.

## PROCEDURAL HISTORY

On April 23, 2013, Ms. Barker filed this action against Genesys.  (*See* Compl., ECF #1.)  Ms. Barker asserts that Genesys interfered with her FMLA rights when it "refused to restore [her] to her employment" after her doctors cleared her to return to work.  (Compl. at ¶19.)  Following discovery, Genesys moved for summary judgment.  (*See* Genesys Mot. and Br., ECF #14.)  The Court held oral argument on Genesys' motion on July 9, 2014.

13

## <u>GOVERNING LEGAL STANDARD</u>

A movant is entitled to summary judgment when it "shows that there is no genuine dispute as to any material fact...." *U.S. SEC v. Sierra Brokerage Services, Inc.,* 712 F.3d 321, 326–27 (6th Cir. 2013) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52 (1986)) (quotations omitted). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for [that party]." *Anderson,* 477 U.S. at 252. However, summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Id.* at 251-252. Indeed, "[c]redibility determinations, the weighing of the evidence, and the drafting of legitimate inferences from the facts are jury functions, not those of a judge…" *Id.* at 255.

## <u>ANALYSIS</u>

**A.    The FMLA and Its Implementing Regulations**

> **1.    The FMLA Allows Eligible Employees to Take Leave Due to a Serious Medical Condition**

The FMLA allows an eligible employee "a total of 12 workweeks of leave during any 12-month period for … a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29

14

U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

An employee entitled to FMLA leave must, upon "return from such leave… be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1)(A). Moreover, "[t]he taking of leave … shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced." 29. U.S.C. § 2614(a)(2).

An employee seeking time off for a serious medical condition "need not expressly assert rights under the FMLA or even mention the FMLA" in order to be eligible for FMLA leave. 29 C.F.R. § 825.303(b) (2009).[4] Instead, an employee "gives sufficient notice when he provides enough information for the employer to

---

[4] The regulations implementing the FMLA have undergone revisions during the past decade (first in 2009, then again in 2013). Where applicable, the Court has cited to and has applied the version of the FMLA regulations in effect during July 2011 – the time period of this dispute. Those regulations apply to this action. *See, e.g., Branham v. Gannett Satellite Information Network, Inc.*, 619 F.3d 563, 569 n.9 (6th Cir. 2010) (internal citations omitted) ("The Department of Labor recently promulgated revised regulations interpreting the FMLA. Those regulations took effect … after the events giving rise to this suit occurred. Therefore, we apply the regulations in place at the time of the events in question"); *Righi v. SMC Corp.*, 632 F.3d 404, 408–09 (7th Cir. 2011) ("[W]e apply the version [of the FMLA regulations that were in place] … when these events occurred…").

reasonably conclude" that leave is needed for a serious health condition. *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cr. 2003).

### 2. An Employer May Require an Employee to Submit a Physician Certification of a Serious Health Condition

The FMLA does not compel every employee seeking leave to provide a physician certification confirming the existence of a serious health condition. However, the FMLA does allow an employer to "require" that a request for FMLA leave "be supported by a certification issued by the [employee's] health care provider…." 29 U.S.C. § 2613. Such a physician certification must include, among other things, "[t]he approximate date on which the serious health condition commenced, and its probable duration." 29 C.F.R. § 825.306(a)(1) (2009).

"At the time the employer requests [that the employee provide a physician] certification, the employer must also advise an employee of the anticipated consequences of an employee's failure to provide adequate certification." 29 C.F.R. § 825.305(d) (2009). A request for certification is not "proper" unless, among other things, it informs the employee of these consequences. *Branham*, 619 F.3d at 573-574.

### 3. If an Employer Requests a Physician Certification, the Employer Must Give the Employee at Least Fifteen Days From the Request to Submit It

The FMLA requires an employee to deliver a properly requested physician certification "'in a timely manner.'" *Branham*, 619 F.3d at 572 (quoting 29 U.S.C.

§ 2613(a).)   The timeliness of the certification depends upon whether the employee's request for leave is foreseeable or unforeseeable.   Where an employee's request for FMLA leave is unforeseeable (as it was in this case), "the employer must give the employee at least fifteen calendar days to provide the requested certification, and more time if it is not practicable under the circumstances to do so within 15 days."   *Id.; See also* 29 C.F.R. § 825.305(b) (2009).

Importantly, the fifteen-day period to provide a certification begins (if at all) *on the date the employer properly requests the certification*, *not* on the date that the employee seeks or begins leave.   *See* 29 C.F.R. § 825.305(b) (2009) ("The employee must provide the requested certification to the employer within 15 calendar days *after the employer's request*, unless it is not practicable under the particular circumstances to do so despite the employee's diligent, good faith efforts or the employer provides more than 15 calendar days to return the requested certification") (emphasis added).   Indeed, an employee's duty to provide a physician certification is not "triggered" unless and until an employer makes a "proper request" for the certification. *Branham*, 619 F.3d at 573-74.   This point bears special emphasis because at various points in these proceedings, Genesys has suggested that Ms. Barker was obligated to submit a physician certification "within 15 days from the commencement of her leave." (Genesys Reply Br., ECF #18 at 3,

17

Pg. ID 409.) [5]  If an employer "terminates the employee before giving her the full fifteen-day period to provide a certification, the employer has violated the FMLA." *Branham,* 619 F.3d at 572.

It is equally clear, though, that an employer may fire an employee who fails to meet the fifteen-day deadline – even if the employee misses the deadline by only a single day. *See Frazier v. Honda of Am. Mfg., Inc.*, 431 F.3d 563, 567 (6th Cir. 2005) (affirming summary judgment in favor of employer when employee submitted requested physician certification one day after fifteen-day deadline expired).  But an employee's failure to timely provide a physician certification is a defense to an FMLA interference claim *only if the employer properly asked for a certification in the first place and if the employee failed to respond within required time frame.  See Kinds v. Ohio Bell Telephone Company*, 724 F.3d 648, 652 (6th Cir. 2013) ("Failure to timely provide a medical certification for which an employer *has properly asked* will generally preclude an employee's FMLA-interference claim") (emphasis added).

To the extent employees have questions about the employer's request for a physician certification – or any other questions "concerning their rights and

_____

[5] Notably, Genesys' FML Policy properly recognizes that *the request* for a certification starts the fifteen-day time period.  The policy provides that Genesys "will require an employee to provide a … certification of the serious health condition" and that an employee "should respond *to the request* for [a] certification within fifteen days *of the request*…" (FML Policy at 1, Pg. Id. 93.) (Emphasis added.)

responsibilities under the FMLA" – "[e]mployers are [] expected to responsively answer [these] questions from employees..." 29 C.F.R. § 825.300(c)(5) (2009).

**B.    There is a Material Factual Dispute as to Whether Genesys Had the Right to Fire Ms. Barker on July 21 on the Ground That Her Absences From Work Were Unexcused Because She Failed to Timely Submit a Certification**

Ms. Barker asserts that Genesys unlawfully interfered with her FMLA rights when it terminated her on July 21. (*See, e.g.,* Compl. at ¶ 19.) To prevail on that claim, Ms. Barker must establish (1) that she is an "eligible employee"; (2) that "[Genesys] is an employer"; (3) that she "was entitled to leave under the FMLA"; (4) that she "gave [Genesys] notice of [her] intention to take leave"; and (5) that Genesys "denied [her] FMLA benefits to which [s]he was entitled." *Wysong v. Dow Chemical Co.*, 503 F.3d 441, 447 (6th Cir. 2007).

For the purposes of this Motion, Genesys does not contest elements 1, 2, and 4 of Ms. Barker's claim.[6] (Genesys Mot. and Br., ECF #14 at 15, n.1, Pg. ID 55.) Instead, Genesys argues that Ms. Barker was not "entitled to leave under the FMLA" (element three). Genesys says that Ms. Barker failed to submit a certification by July 21, and thus her absences between July 6 and July 21 were unexcused. (*Id.*) Genesys concludes that when it fired her on July 21 due to her

---

[6] Likewise, Genesys has not challenged Ms. Barker's FMLA leave by arguing, for example, that she did not suffer from a "serious health condition" as defined by the FMLA.

unexcused absence, it did not deny her "FMLA benefits to which she was entitled" (element five). (*Id.*)

Genesys had the right on July 21 to deem Ms. Barker's absences unexcused for failing to submit a certification only if it had made a "proper request" for a certification on July 6, such that Ms. Barker's fifteen days to submit a certification (and thereby excuse her absences) had expired. *See, e.g., Branham*, 619 F.3d at 573. Reviewing the record in the light most favorable to Ms. Barker, the Court finds that there is a material factual dispute as to whether Genesys made a proper request for a certification on July 6, and, even if Genesys did so, whether it was practicable for Ms. Barker to respond within fifteen days. Genesys is thus not entitled to summary judgment on the ground that Ms. Barker's failure to submit a certification by July 21 allowed Genesys to treat her absences as unexcused and to fire her for those absences.

### 1.  There is a Material Factual Dispute as to Whether Genesys Made a Proper Request for a Certification on July 6

The record contains little evidence concerning any statements by Genesys to Ms. Barker on July 6, and it certainly does not contain undisputed evidence that Genesys properly requested a certification from her on that date. The only competent evidence concerning communications between Genesys and Ms. Barker on July 6 is Ms. Barker's deposition testimony describing her call with her

supervisor that day.[7]  Ms. Barker testified that during that call she "would have been thinking [about] *or* been advised to fill out FMLA paperwork."  (Ms. Barker's Dep. at 95, Pg. ID 323.) (Emphasis added.)  This testimony is, at best, equivocal as to whether Ms. Barker's supervisor actually "advised" her to complete a certification.  Indeed, the Court must construe this testimony in Ms. Barker's favor for purposes of this motion, and the most favorable construction of this testimony for Ms. Barker is that she was thinking that she should complete the form, not that the supervisor advised Ms. Barker to do so.

In any event, even if Ms. Barker's supervisor had "advised" her to "fill out FMLA paperwork" on July 6, there is a material question of fact regarding whether that would have started the fifteen-day period.  The supervisor's request would

---

[7] Genesys has submitted notes made by Ms. Barker's supervisor in which the supervisor appears to memorialize some of her communications with Ms. Barker. (*See* ECF #14-9 at 2-3, Pg. ID 104-105.)  In a notation that appears to be written on July 6, Ms. Barker's supervisor wrote that, Ms. Barker "state[d] that she is aware that she does not have the [personal time off] to cover this and has not yet filled out her FMLA paperwork.  She states that she will today and turn it in when returns to work."  (*Id.* at 2, Pg. ID 104.)  The notes, however, are hearsay; the supervisor was neither deposed nor submitted an affidavit in support of Genesys' Motion.  It "is well established that a court may not consider inadmissible hearsay when deciding a summary-judgment motion."  *Flones v. Beaumont Health System*, --- Fed. App'x ---, 2014 WL 2497557 at *5 (6th Cir. June 4, 2014).  In any event, even if the Court did consider the content of the notes, they contain no conclusive evidence that Ms. Barker's supervisor actually made a request for a certification on July 6 or that she explained to Ms. Barker on that date the consequences if Ms. Barker failed to return a certification within fifteen days.  Furthermore, when the supervisor summarized her July 6 communications with Ms. Barker on July 19, she did not mention the FMLA or a certification.  (*See* ECF #14-9 at 3, Pg. ID 105.)

have started the clock only if the supervisor also informed Ms. Barker of the consequences of failing to submit a certification on time (i.e. within fifteen days). *See* 29 C.F.R. § 825.305(d) (2009) (request for certification must "advise [employee] of the anticipated consequences of [her] failure to provide adequate certification"); *Branham*, 619 F.3d at 574 (reversing district court's grant of summary judgment to employer in FMLA interference dispute because, in part, employer never "informed [the employee-plaintiff] of the consequences of failing to provide" a physician certification).  There is no definitive evidence in the record that the supervisor informed Ms. Barker of these consequences during the July 6 conversation.

Moreover, the supervisor's communications to Ms. Barker on July 6 were oral, and it is not clear, based on this record, that an oral request for a certification (had she made one that day) would have been sufficient to start the fifteen-day time period.  An oral request would be effective only if Genesys had made a proper, written request for a certification from Ms. Barker within the twelve months preceding her July leave.  *See* 29 C.F.R. §§ 825.305(a), 825.300(c), and 825.300(b)(1)-(3) (2009).  As Genesys has pointed out, there is evidence in the record that in April 2011 Ms. Barker had a blank certification form in her possession related to an earlier potential request for FMLA leave.  (*See* Ms. Barker Dep. at 110-111, Pg. ID 338-339.)  However, there is no unequivocal evidence that

22

in April 2011 (or at any other time in the twelve months preceding July 2011) Genesys actually provided Ms. Barker with written notice that (1) a certification must be completed and timely submitted to Genesys in order for Ms. Barker to qualify for leave and (2) she could lose her job if she failed to submit the form on time.   Thus, there is at least a question of fact as to whether any oral communications from Genesys to Ms. Barker on July 6th would have been sufficient to start the fifteen-day period, and that question of fact precludes summary judgment. *See Branham*, 619 F.3d at 573 (summary judgment inappropriate when there is a material factual dispute as to whether oral certification request satisfied applicable requirements).

In sum, there is a material factual dispute as to whether on July 6th, Genesys properly requested that Ms. Barker submit a certification.   Given that factual dispute, Genesys did not have a clear legal right on July 21 to deem Ms. Barker's absences unexcused for failing to submit a certification and terminate Ms. Barker's employment based on these absences.   Accordingly, Genesys is not entitled to summary judgment. *See, e.g., Branham, supra; Schober v. SMC Pneumatics, Inc.*, 2000 WL 1231557 (S.D. Ind. 2000) (denying employer's motion for summary judgment where jury could reasonably have found that, before expiration of 15-day period, employer fired employee for failing to submit physician certification);

*Chenoweth v. Wal-Mart Stores, Inc.*, 159 F.Supp.2d 1032 (S.D. Ohio 2001) (same).

### 2. There is a Material Factual Dispute as to Whether It Was Practicable for Ms. Barker to Have Submitted the Completed Certification by July 21

Even if the undisputed evidence established that Genesys made a proper request for a certification on July 6, Ms. Barker would have been entitled to submit the completed form after July 21 if it was "not practicable" for her to have met that deadline. 29 C.F.R. § 825.305(b) (2009) (employee is entitled to more than fifteen days to submit requested physician certification if "*it is not practicable under the particular circumstances* [for the employee to respond to the employer's proper request] despite the employee's diligent, good faith efforts…") (emphasis added). There is a material factual dispute as to whether it was "practicable" for Ms. Barker to have submitted the Completed Certification by July 21, and that dispute is a further bar to summary judgment in favor of Genesys.

Ms. Barker testified repeatedly that in the days before Genesys' July 21 deadline, she was so ill that she could not even leave her home, much less submit paperwork to Genesys.  For example, Ms. Barker says that on July 15 she had "profuse diarrhea …. abdominal pain, [and had a] fever."  (Ms. Barker Dep. at 103-14, Pg. ID 332-333.) Ms. Barker further testified that on July 18, she was suffering from severe diarrhea and a fever and was so sick she "couldn't even get

24

to the doctor's office." (*Id.* at 104, Pg. ID 332.)  That night, and into the morning of July 19, Ms. Barker was so sick, she was "up all night in the bathroom." (*Id.* at 126-127, Pg. ID 344-355.)  Ms. Barker therefore insists she did not have "any means to pick up [and submit] the [Completed Certification] earlier" than she did. (*Id.* at 134, Pg. ID 362.)

Genesys argues that Ms. Barker could have submitted the Completed Certification by July 21 because she "admitted leaving her home several times during the 15 day certification period…" (Genesys Reply. Br. at 6, Pg. ID 412.) Genesys notes that Ms. Barker attended a wedding on July 9 and went to a doctor's appointment on July 13. (*Id.*)  But the wedding – which Ms. Barker attended for only one hour – took place immediately after Ms. Barker was discharged from the hospital and *before* Ms. Barker began suffering the severe post-hospitalization complications that rendered her homebound. (Ms. Barker Dep. at 153, Pg. ID 381.) Moreover, the wedding took place days *before* Ms. Barker believes she gave a copy of the certification form to her doctor on July 13th or 14th and the physician completed that form. (*Id.* at 121-122, Pg. ID 349-350.)  That Ms. Barker briefly attended a wedding during the narrow window of time between her discharge from the hospital and the onset of disabling complications does not conclusively establish that Ms. Barker was well enough days later to obtain the Completed Certification from her physician and deliver it to Genesys.  Likewise, the fact that

25

Ms. Barker attended doctor's appointments falls far short of undisputed proof that she was healthy enough to obtain and deliver the Completed Certification to Genesys.  That Ms. Barker was able to attend essential medical appointments to address a severe illness does not necessarily mean that she was well enough to make an additional stop at Genesys to deliver the Completed Certification.

Genesys also argues that somebody else could have obtained and submitted the Completed Certification for Ms. Barker.  However, Ms. Barker testified that neither her daughter (who had just given birth) nor her husband (who had just started a new job) could pick up the Completed Certification and submit it to Genesys.  (*Id.* at 134, Pg. ID 362.)

Finally, Genesys asserts that Ms. Barker's physician could have sent the Completed Certification to Genesys directly without requiring Ms. Barker to physically pick the certification up from her doctor's office.   As Ms. Barker explained, though, this was not her doctor's "usual" practice and is "not what they did."   (*Id.*)   Instead, Ms. Barker's doctor required her patients to "pick [such certification forms] up.  [The doctor] didn't want to be responsible."  (*Id.*)

There is a genuine issue of material fact as to whether it was practicable for Ms. Barker to deliver the Completed Certification to Genesys by July 21.  That factual dispute precludes the grant of summary judgment in Genesys' favor.

C.    **There is a Material Factual Dispute as to Whether Genesys Ever Properly Requested a Certification From Ms. Barker and, Thus, as to Whether Genesys Ever Had the Right to Deem Her Absences Unexcused For Failing to Submit a Certification**

In addition to the material factual dispute as to whether Genesys properly requested a certification from Ms. Barker on July 6, there is also such a dispute as to whether Genesys *ever* properly requested a certification. The record contains evidence that Genesys mailed certain unidentified "FMLA paperwork" to Ms. Barker on July 13 (Ms. Barker Dep. at 109, Pg. ID 337), but the record contains no evidence as to whether any of this "paperwork" communicated the essential contents of a request for a certification under the applicable FMLA regulations. *See* 29 C.F.R. § 825.305(d) (2009). Likewise, while the record contains evidence that at some point after July 6, Ms. Barker's supervisor "impressed upon her the importance of doing something to provide medical substantiation of her health condition" (Ms. Barker Dep. at 154, Pg. ID 382), for the reasons explained above at pp. 22-23, a material question of fact exists as to whether these oral communications qualified as a proper request for a certification. These questions of fact further preclude the Court from holding that, as a matter of law, Genesys had the right to deem Ms. Barker's absences unexcused due to her failure to submit a certification and terminate Ms. Barker's employment for missing work. *See, e.g., Branham*, 619 F.3d at 573-574 (employee's failure to provide medical certification did not entitle employer to summary judgment because employer could not

definitively establish it complied with the applicable FMLA regulations when it requested the certification).

The question of fact concerning whether Genesys ever properly requested a certification is fatal to another of Genesys's arguments – that it is entitled to summary judgment because Ms. Barker never submitted a certification covering the entire period of her absences.  More specifically, Genesys argues that it is entitled to judgment because even if the Completed Certification is considered, that form only excuses Ms. Barker's absences through July 18 and does not cover the remaining days – through July 21 – that she missed prior to her termination. Genesys insists that since Ms. Barker never submitted a certification covering the days following July 18, her absences on those days are unexcused, and Genesys could lawfully fire her based upon those unexcused absences. (*See* Genesys Reply Br. at 7-8, Pg. ID 413-414.)  However, since there is a material factual dispute as to whether Genesys ever properly requested a certification, it is not clear, as a matter of law, that it could lawfully declare her absences unexcused based on *any* failure to submit a certification.  Thus, under at least one plausible view of the facts, a jury could find that Ms. Barker is entitled to recover even if, as Genesys insists, the Completed Certification did not cover all of her absences.[8]

---

[8] Genesys also argues that because Ms. Barker "never produced" a certification that covered her absences after July 18, under the applicable regulations, her "leave is not FMLA leave."  (Genesys Reply Br. at 7, Pg. ID 413, quoting 29 C.F.R. §

**D.  Genesys is Not Entitled to Summary Judgment on the Ground That Its Alleged Violation of the FMLA Did Not Prejudice Ms. Barker**

The FMLA "provides [a plaintiff/employee] no relief unless [she] has been prejudiced by [the defendant/employer's] violation" of the statute. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  On this record, there is a question of fact as to whether Ms. Barker suffered prejudice.  She has presented evidence from which a jury could find that (1) her absences qualified for FMLA protection; (2) Genesys violated the FMLA when, on July 21, it deemed her absences to be unexcused due to her failure to submit a physician certification, and (3) that violation led directly to her unlawful termination.  If a jury made these findings, it would necessarily find that Ms. Barker suffered an injury "by reason of" Genesys' FMLA violation and, accordingly, that she suffered cognizable prejudice. *See, e.g.*, *Lubke v. City of Arlington,* 455 F.3d 489, 498 (5th Cir. 2006) (employee established prejudice by showing that he had a medical condition that qualified for FMLA protection; that he would have been granted FMLA leave had he provided the certification; and the employer dismissed him without allowing her the required minimum amount of time in which to submit the certification.)

Genesys counters that on this record and as a matter of law, Ms. Barker cannot show prejudice.  It argues that Ms. Barker "was not prejudiced by any

825.313(b) (2009) ("If the employee never produces the certification, the leave is not FMLA leave").)  This regulation, however, is clearly premised on an employer making a proper request in the first place.

failure by Genesys to give her written notice after she requested leave, because she admitted that she was aware of the requirement that she submit [a] certification … within fifteen days from the commencement of her leave." (Genesys Reply Br at 2, pg. ID 409.)  There are several problems with this argument.  First, the argument rests upon the incorrect premise that Ms. Barker had fifteen days "from the commencement of her leave" – as opposed to fifteen days from a proper request by Genesys – to submit a certification.

Second, the argument construes Ms. Barker's alleged "admissions" in the light most favorable to Genesys, rather than in the light most favorable to Ms. Barker.  When construed in Ms. Barker's favor, her testimony cannot be read to include an "admission" that she knew she had to submit a certification *by Genesys' deadline of July 21*.  While she admitted that she was aware of the "15-day requirement" in "the policy," the FML Policy states only that an employee must provide a certification *within fifteen days of a "request."* (FML Policy at 1, Pg. ID 93.) (Emphasis added.)  So, Ms. Barker's admission that she was aware of "the policy" is, for purposes of this motion, simply a recognition that *if* Genesys made a proper request on July 6, then she would have fifteen days from that point to provide a certification.  And, as explained above at pp. 20-21, in the context of this Motion, Ms. Barker's testimony cannot be construed as an admission that her supervisor requested a certification on July 6.  Moreover, Ms. Barker testified that

her supervisor never gave her a specific date – much less July 21 – by which she needed to submit a certification.  (*See* Ms. Barker Dep. at 155, Pg. ID 383.)  This further undercuts Genesys' argument that Ms. Barker "admitted" knowing that a certification was due on July 21.

Third, Genesys' argument that Ms. Barker suffered no prejudice because she was aware of Genesys' FML Policy and had been generally advised by her supervisor to return FMLA paperwork, if accepted by this Court, would undermine the FMLA's implementing regulations concerning physician certifications.  Those regulations – detailed above – place the onus squarely on the employer to make a proper request for a physician certification (i.e., one that contains the required advice and warnings to the employee) and expressly provide that the 15-day time period for an employee to provide the certification commences when the employer makes the request.  Starting the 15-day clock immediately upon an employee's absence, based upon an employee's knowledge that her employer's general policy is to request a physician certification and general statements by an employer representative, would compromise the protections that the regulations provide for employees.

Genesys cites several cases in support its argument that Ms. Barker cannot show prejudice, but none of the cases carry the day for Genesys.  Genesys primarily relies upon the unpublished decision of the United States Court of

31

Appeals for the Sixth Circuit in *Verkade v. United States Postal Service*, 378 Fed.

App'x. 567 (6th Cir. 2010).  Genesys describes *Verkade* and its application here as

follows:

> In *Verkade*, the plaintiff failed to timely submit a medical
> certification and the employer denied his leave. At the time the
> employee requested leave, the employer did not provide the
> plaintiff with written notice of the certification requirement or
> the 15 day deadline to submit the certification. *Id*. at 574-575.
> While finding that the employer "therefore technically violated
> the FMLA regulations," the Court nevertheless affirmed
> judgment in favor of the employer *because the plaintiff was not
> prejudiced by these technical violations since he was "well
> aware of what was required" with respect to the medical
> certification requirements based on his prior communications
> with his employer. Id*. at 575. Therefore, "any harm was not by
> reason of the technical violation but by reason of his own
> noncompliance with the certification requirement"

(Genesys Reply Br. at 2, Pg. ID 408.) (Original emphasis removed;  current

emphasis added.)

But the Sixth Circuit in *Verkade* did *not* find a lack of prejudice "because"

the employee knew that the employer required a certification.  On the contrary, the

court held that the employee failed to show prejudice because he "was not

terminated, disciplined or demoted because of his absence" and because he was

"compensated, at least in part, by a settlement for this absence and his position was

held open upon his return." *Verkade*, 379 Fed. App'x. at 575.   The lack of

prejudice language that Genesys quotes from *Verkade* is *dicta*; it follows the

court's holding that the employee suffered no prejudice because the employer took

no adverse action against him for failing to submit the certification in question. The contrast between this case – in which Ms. Barker *was* terminated after Genesys declared her absences unexcused due to her failure to provide a certification by Genesys' fifteen-day deadline – and *Verkade* – in which the employee suffered no adverse consequences as a result of his failure to submit a certification during this time period – is clear. *Verkade* cannot fairly be read to support dismissal of an FMLA claim by an employee who otherwise qualified for FMLA leave and *was* terminated for having unexcused absences due to the failure to provide a physician certification.[9]

Genesys's lack of prejudice argument also relies heavily on *Lipscomb v. Elec. Data. Sys. Corp.*, 462 F.Supp.2d 581(D. Del. 2006), *aff'd on other grounds*, 275 Fed. App'x. 144 (3d Cir. 2008) – a case that Genesys calls "directly on point." Genesys' argument concerning *Lipscomb*, worth quoting at length, is as follows:

> In *Lipscomb v. Elec. Data. Sys. Corp.*, 462 F.Supp.2d 581, 585-586, 590 (D. Del. 2006), *aff'd on other grounds*, 275 Fed. Appx. 144 (3d Cir. 2008), the plaintiff was terminated because she

_____

[9] Another relevant distinction between this case and *Verkade* relates to the communication between employer and employee. In *Verkade*, the employee "had communicated with the FMLA Office at considerable length regarding the requirement elements of certification by the time he requested FMLA leave," and as a result of that communication he was "well aware of what was required." *Verkade*, 378 Fed. App'x. at 575. In contrast, Ms. Barker told her employer that in light of uncertainty surrounding her condition and her return date, she was confused about what form of certification Genesys would require, and she said that her supervisor did not answer her questions on this point. (*See, e.g.,* Ms. Barker Dep. at 113, Pg. ID 341.)

failed to submit her medical certification form by the 15-day deadline required by the employer, and her absences were therefore unexcused pursuant to the employer's attendance policy. In support of her FMLA interference claim, Plaintiff alleged that she had not received written notice of the 15-day deadline in which to submit a medical certification, and summary judgment was therefore improper. *Id*. The court disagreed, holding that "[e]ven were defendant's notice improper in this case, plaintiff cannot meet her burden of proving any real impairment of her rights and resulting prejudice as required by *Ragsdale*" because she admitted that she "knew that she had an obligation to substantiate her absence" and was reminded by her supervisor "several times" of this obligation. *Id*. at 589 (emphasis added.) It was the plaintiff's conduct in failing to submit the certification that caused her termination for unexcused absences. (*Id*.), The plaintiff therefore suffered no prejudice by the employer's alleged technical failure to provide notice of the certification requirements. *Id*. at 590.

*Lipscomb* is directly on point and instructs that even if Genesys allegedly failed to comply with the FMLA's notice requirements, Plaintiff cannot meet her burden of proving an impairment of her rights *because of* the notice issue since she admitted that she had been "aware of the 15-day requirement," that "there was no question in [her] mind" that she would have to submit the certification in order for her absences to be excused, and that her supervisor continuously informed her of her obligation to submit the medical certification. (ECF #18, Reply p. 2-4.) As in *Lipscomb*, it was Plaintiff's failure to act when she admitted she was required to, that caused her harm -- her absences were unexcused, which in turn resulted in her termination under the Genesys Attendance Policy. Plaintiff was not prejudiced by any alleged technical FMLA violations. *Lipscomb*, 462 F.Supp.2d at 590.

(Genesys Supplemental Br. at 3-4, Pg. ID 444-445.) (Original emphasis removed.)

There are important differences between *Lipscomb* and this case. In *Lipscomb*, the employer [through its outside FMLA administrator] "sent to plaintiff no less than five letters requesting the medical information required to support her request for FMLA benefits, and informing her that failure to timely submit the required medical information could result in her being denied said benefits." *Lipscomb*, 462 F.Supp.2d at 588-589. In one of these letters, the employer "enclosed a Certification of Health Care Provider Statement form for FMLA benefits, and stated that the '[f]ailure to provide this medical certification within 15 days of the date of this letter may result in denial of FMLA protection,'" and the employer did not fire the employee until long after the fifteen days had expired. *Lipscomb*, 462 F.Supp.2d at 585-87. The district court in *Lipscomb* therefore held that the employer "gave proper notice of the need for a medical certification, and of the consequences for failing to submit such, consistent with the FMLA." *Id.* at 589. In light of the court's holding that the employer *did* give proper notice of the certification requirement, *Lipscomb* does not support summary judgment where there is a material factual dispute about whether the employer *failed* to give such proper notice. *Lipscomb* also stands in sharp contrast to this case in which there is no evidence Genesys ever provided a written request for medical information *or* specifically explained to Ms. Barker the consequences should she fail to produce the requested medical information within fifteen days.

The distinctions between *Lipscomb* and this case run even deeper.  The court in *Lipscomb* stressed that the employer gave the employee *multiple* chances, well beyond the initial fifteen day period, to provide the requested medical certification, and even after the employee "miss[ed] the final 15-day deadline of July 2" she was not terminated for another 11 days.  *Lipscomb*, 462 F.Supp.2d at 589.  Here, Genesys fired Ms. Barker immediately upon the expiration of the 15 day period, and it refused to consider even discussing her reinstatement after she provided the Completed Certification.   Unlike *Lipscomb*, this is not a case in which the employer provided "repeated opportunities [for] its employees to comply with its requests…"  *Id.* at 590, n.8.  In addition, in *Lipscomb*, the employee-plaintiff "never produced, or even tried to produce, a medical certification in support of her absence."  *Id.* at 589.  Here, Ms. Barker repeatedly updated her supervisor nearly every day regarding her condition, she submitted the Completed Certification, and she indicated a willingness to supplement that form if Genesys so requested.[10]

Genesys also relies upon *Campbell v. Jefferson Univ. Physicians*, --- F. Supp.2d ---; 2014 WL 2194519 (E.D. Pa. May 27, 2014) and *Armfield v. Key*

---

[10] Moreover, the lack-of-prejudice discussion from *Lipscomb* upon which Genesys relies is *dicta*.  Before discussing the prejudice issue, the court had already concluded that the employer did not violate the FMLA.  The decision of the United States Court of Appeals for the Third Circuit affirming the district court confirms that the prejudice discussion was not essential to the holding of the case. The Third Circuit affirmed the district court's holding that the employer did not violate the FMLA and then saw "no need" to reach the prejudice issue. *See Lipscomb*, 275 Fed. App'x. at 149.

36

*Plastics, LLC*, 2011 WL 3022253 (N.D. Ind.), but those cases, too, are easily distinguishable.  In *Campbell*, the employee "was *not* fired for failing to obtain a recertification" related to her request for FMLA leave, but instead was fired for "failing to come to work or call to report her absences."  *Campbell*, 2014 WL 2194519 at \*10 (emphasis added).  Moreover, the employee in *Campbell* conceded that the condition that originally justified her leave when she first took FMLA leave "no longer" existed when the employer sought a re-certification to support an extension of the leave, and thus the "time off would not have been covered under the FMLA even if she had obtained a recertification."  *Id*.  Here, in contrast, Ms. Barker *was* fired for having unexcused absences due to her failure to provide a certification, and she has presented evidence that she *would* have been eligible for leave up through the date of her termination. (*See, e.g.,* Letter from Dr. Jenese Reynolds, ECF #17-9; Return to Work Statement, ECF #17-10.)

Likewise, in *Armfield*, "neither party dispute[d] that [the] plaintiff was fired for accumulating three no call / no shows in violation of defendant's 'three strikes' policy, *not because she failed to return her medical certification*."  *Armfield*, 2011 WL 3022253 at \*7 (emphasis added).  Because the employee was fired for a legitimate reason that was wholly unconnected to whether she provided a requested certification, the employee suffered no prejudice even though the termination occurred less than fifteen days after the employer requested the certification.  The

court in *Armfield* stressed that "[t]he FMLA does not provide for a fifteen-day amnesty period wherein an employee cannot be terminated *for any reason* while she seeks medical certification from her health care provider."   *Id.* (emphasis added).  Here, of course, Ms. Barker was fired after Genesys declared her absences from work unexcused because she never submitted a certification.

## CONCLUSION

For all of the reasons started above, the Court therefore **DENIES** Genesys' Motion for Summary Judgment.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  July 24, 2014

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 24, 2014, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(313) 234-5113

38